UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARYL ENGELHARDT,

        Plaintiff,                            CIVIL ACTION NO. 12-10197

       v.                                   DISTRICT JUDGE MARK A. GOLDSMITH

COMMISSIONER OF                   MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Daryl Engelhardt ("Plaintiff"), proceeding *pro se*, challenges the Commissioner of Social Security's ("Commissioner") final decision to deny his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Cross motions for summary judgment are pending (Dkts. 11, 14).[1]

**I. RECOMMENDATION**

For the reasons set forth below, this Magistrate Judge finds that substantial evidence supports the Administrative Law Judge's decision that Plaintiff was not disabled. Accordingly, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

---

[1] As discussed below, Plaintiff's "motion" was a letter to the Court.

**II. REPORT**

  *A.  Administrative Proceedings*

  Plaintiff applied for benefits in March 2008, alleging that he became unable to work on January 20, 2005 (Tr. 13).[2] The Commissioner initially denied the application on June 13, 2008 (Tr. 13). Plaintiff requested a hearing and, on June 24, 2010, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Richard Sasena, who considered the case *de novo*. In a decision dated August 19, 2010, the ALJ found that Plaintiff was not disabled (Tr. 13-23). Plaintiff requested a review of this decision by the Appeal's Council (Tr. 7-9). On November 18, 2011, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for further review (Tr 1-6).

  *B.  ALJ Findings*

  Plaintiff was 45 years old on the date of the ALJ's decision (Tr. 15). He previously worked as a mail carrier for the United States Postal Service (Tr. 21). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since September 6, 2007, his amended disability onset date (Tr. 15).

  At step two, the ALJ found that Plaintiff had the following "severe" impairments: degenerative disc disease, bipolar disorder, generalized anxiety disorder and avoidant personality disorder (Tr. 16).[3]

---

  [2] Plaintiff filed a previous Social Security benefits application, which was denied on September 5, 2007. The ALJ refused to reopen the previous denial of benefits and amended Plaintiff's alleged disability onset date to September 6, 2007 – the day after the previous denial of benefits (Tr. 13).

  [3] Avoidant personality disorder is a mental health condition in which a person has a lifelong pattern of feeling very shy, inadequate, and sensitive to rejection. *See* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001936/

At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or medically equaled one of the listings in the regulations. *Id.*

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform:

> [L]ight work...except being unable to lift more than 20 pounds occasionally and 10 pounds frequently, needing a sit/stand option, occasionally being able to climb, balance, stoop, kneel, crouch, and crawl, being restricted to simple, routine, repetitive tasks (requires little judgment, can be learned in [a] short period), no interaction with the public, and occasional interaction with coworkers (not a team member) (Tr. 16-17).

At step four, the ALJ found that Plaintiff could not perform his previous work as a mail carrier (Tr. 21).

At step five, the ALJ denied Plaintiff benefits, finding that Plaintiff could perform a significant number of jobs available in the national economy, such as assembler (3,200 jobs in southeast Michigan) or packer (1,000 jobs in southeast Michigan) (Tr. 22).

### C. *Plaintiff's Claims of Error*

Plaintiff did not file a timely motion for summary judgment; therefore, the Court issued an order to show cause (Dkt. 10), requiring Plaintiff to explain why his case should not be dismissed for lack of prosecution. Plaintiff responded with a letter of explanation (Dkt. 11): he did not file a motion for summary judgment, because he could not find an attorney willing to represent him. Plaintiff's letter also stated, generally, his objections to the ALJ's decision and included a copy of his Complaint.

Plaintiff's arguments are somewhat scattershot. He argues primarily that the ALJ erred in finding his felony convictions (for mail fraud and making false statements[4]) hurt his

---

[4] By way of background, a criminal complaint was filed against Plaintiff in this Court. According to a special agent of the Office of Inspector General ("OIG") for the U.S. Postal Service, Plaintiff was receiving worker's compensation benefits from the Postal Service, due to a

-3-

credibility (Dkt. 11 at 2-3). Plaintiff does not claim the ALJ was wrong to consider these felony convictions in assessing his credibility; but rather, that he and his lawyer were unprepared to discuss the convictions or rebut the damage to his credibility, because his lawyer did not believe the convictions "would not be used against him" (Dkt. 1, Compl., p.1; Dkt. 11, Letter, p. 2).

Plaintiff argues that his attorney did not adequately represent him during the hearing (Dkt. 11 at 2). He also takes issue with certain findings made by the ALJ (such as Plaintiff's school attendance, ability to use a riding lawnmower and his work applying airbrushed tattoos, etc.).[5] Finally, Plaintiff claims that the ALJ did not properly assess his mental condition.

---

back injury he allegedly suffered in 2001; Plaintiff was on "total disability" since January 2005, and was receiving $2,087.70 in monthly benefit payments. OIG Agents received information that Plaintiff had actually been working during the time he claimed to be disabled, applying "airbursh tattoos" at fairs around Michigan. Plaintiff admitted to an undercover OIG agent that he had worked "a lot of hours" during the time he claimed to be disabled. *See United States v. Engelhardt*, E.D. Mich. Case No. 07-mj-30187; Dkt. 1 at 3. OIG agents observed Plaintiff "lifting and moving equipment and boxes, applying tattoos, accepting cash, handling business transactions, laughing, walking, jogging, sitting, and standing for extended hours (10-12 hours per day)" (*Id.* at 4). An OIG agent also observed Plaintiff "physically disassembling the two booths (tattoo and aura) and all the related equipment almost entirely by himself," by bending, lifting, stretching arms, packing, and carrying (*Id.* at 5).

OIG set up a disability interview with its agents posing as employees of the Department of Labor ("DOL"). *Id.* Shortly before the interview, Plaintiff was observed walking and rapidly crossing the street as he approached the DOL office. *Id.* Plaintiff answered on a DOL form that he was not involved in any business enterprise for the past 15 months. *Id.* at 6. He stated that he did not help any other person, including family members, in a business. *Id.*

On December 18, 2007, after a trial before Judge Lawson, a jury acquitted Plaintiff on some counts but convicted him on four counts of mail fraud and four counts of knowingly making material false statements. *See United States v. Engelhardt*, E.D. Mich. Case No. 07-20419; Dkt. 35. Judge Lawson sentenced Plaintiff in May 2008 to six months' incarceration with 24 months' supervised release (six months of which would be home confinement), and ordered $40,831.90 in restitution (*Id.*; Dkt. 49).

[5] For example, Plaintiff says the ALJ found he had a four-year college degree when, in fact, he only had a two year degree; points out that income he received in 2008 was not "earned" but instead from closing a retirement account; and says that in other portions of a 20-hour surveillance video showing Plaintiff engaging in physical activity – he was not physically active. Assuming these facts are true, the ALJ's decision is still supported by substantial evidence.

-4-

**III. DISCUSSION**

*A. Framework for Disability Determinations*

Under the Social Security Act (the "Act") Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B. Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." (internal quotation marks omitted)). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the

decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

### C.    *Analysis*

Plaintiff's overarching argument on appeal is that the ALJ erred in finding him not fully credible. This Court does not make its own credibility determinations. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *see also Lawson v. Comm'r of Soc. Sec.*, 192 Fed. App'x. 521, 528 (6th Cir. 2006). The Court cannot substitute its own credibility determination for the ALJ's. The Court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed ...." *Kuhn v. Comm'r of Soc. Sec.*, 124 Fed. App'x. 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under

the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 Fed. App'x. 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007).

The ALJ provided a detailed and lengthy discussion of his reasons for finding Plaintiff's subjective complaints not fully credible. Plaintiff's primary contention is misplaced: it is well-settled that a criminal conviction, punishable by death or imprisonment in excess of one year, is evidence that may be used to discredit an individual's credibility.[6] *See* Fed. R. Evid. 609(a)(1); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir.1999). Furthermore, a fair reading of the ALJ's decision indicates his credibility determination was based on the unsupported nature of Plaintiff's testimony and the lack of credible medical evidence in the record – not solely on Plaintiff's criminal convictions. *See Vreeland v. Astrue*, Case No. 06–C–466–C, 2007 WL 5414923, at *13 (W.D.Wis., Mar. 27, 2007) (when considering credibility it is not improper for the ALJ to consider criminal convictions as "part of the totality of circumstances"). Indeed, one of Plaintiff's treating physicians – Dr. Polina – said he viewed a tape of Plaintiff performing tasks he had told Dr. Polina he was incapable of doing:

> Daryl returns to the office today. He is still stating he is having low back pain. I informed him that I was seen by two governmental agents who have been following his case. They showed me a film that shows Daryl working at carnival sites up to 12 hours a day. During this period he was working, he was on his feet

---

[6] Plaintiff's previous felony convictions are especially pertinent to the ALJ's credibility determination, given that Plaintiff was convicted of lying to a federal government agency to wrongfully obtain disability benefits.

-8-

> most of the time. He was doing a lot of bending, twisting and lifting. He was doing all of the things he said he could not do at his place of employment. I have been writing him off work notes for the last year and a half. It appears to me now that Daryl was not being totally honest with me and I informed him [of] that. I will no longer see him as a physician (Tr. 299).

As a result, Dr. Polina wrote Plaintiff the following letter:

> As you know, from our conversation today, I can no longer see you in a doctor-patient relationship. I do not feel that you have been totally honest with me in regards to your condition over the past year and a half. This became apparent to me after I saw the videotape of you working at various carnival sites in August 2006, and September 2006. During this period of time, you were off work and stating that you were having severe back pain and that you felt good only in a fetal position. I believe based on what I saw in those tapes that you could return to full-time work without restrictions. If you do not feel that this is the case, I would advise you to see another physician. I am going to give you the name of three physicians for you to see and you can contact for any further management of your back pain and any medications that you may need.

The ALJ appropriately found that this evidence undermined Plaintiff's credibility concerning his alleged back pain (Tr. 20).

Plaintiff also contends that a remand is warranted, because his attorney failed to adequately represent him at the hearing before the ALJ. However, there is no right to effective representation by counsel in an administrative proceeding or other civil action. *See, e.g., Hayes v. Sec'y of Health & Human Servs.*, No. 93-1498, 1993 WL 315672 (6th Cir. Aug. 18, 1993); *Nicholson v. Rushen*, 767 F.2d 1426, 1427 (9th Cir. 1985). Therefore, this argument is not well-taken.

Finally, Plaintiff argues, somewhat circuitously, that the ALJ failed to appropriately recognize the full-impact of his mental impairments. Much of Plaintiff's argument focuses on events that occurred well after the ALJ issued his opinion. As such, these events are not relevant to a review of the ALJ's decision.

In finding Plaintiff not disabled, the ALJ concluded that Plaintiff's mental condition between July 2007 and February 2008 was due in large part to his criminal charges, conviction

and impending prison sentence. The ALJ observed that, according to records, Plaintiff's "primary" difficulty related to his legal problems and that his mental condition was "precipitated by being charged with fraud" (Tr. 18).

The ALJ also observed that after being hospitalized, Plaintiff made "rapid and good" progress, citing a report by Dr. Phillipa Zylanoff dated April 2008 that Plaintiff "has responded well to the current combination of pharmacotherapy" and that his mood was slightly less than normal (Tr. 18, 334-35). In fact, Dr. Zylanoff characterized Plaintiff's mental status examination in March 2008 as "normal" (Tr. 336). Furthermore, despite noting that Plaintiff was under considerable stress at that time, she noted no significant limitations in his ability to carry out simple work in a ordinary routine without supervision, and to make simple work-related decisions. *Id.* Dr. Zylanoff did find Plaintiff moderately (not markedly) limited in some areas related to detailed instructions and concentration, but the ALJ accommodated those limitations by finding that Plaintiff could do only simple work (Tr. 17).

Although Dr. Zylanoff would later write, on April 21, 2010, that Plaintiff's mental condition rendered him disabled, the ALJ stated good reasons for discounting that particular opinion. Specifically, the ALJ noted that Dr. Zylanoff's opinion was based in part on her acceptance of Plaintiff's assertion that he avoided all but superficial social contact with those outside of his family (Tr. 19). However, the ALJ found that Plaintiff's assertion conflicted with other evidence in the record, such as Plaintiff's work applying airbrushed tattoos at festivals and his college attendance (Tr. 19-20). The ALJ also noted that Dr. Zylanoff rendered inconsistent opinions: he had previously stated that Plaintiff had "good" social skills (Tr. 20). Furthermore, while Dr. Zylanoff referred to Plaintiff's hospitalizations in late 2007 and early 2008, the ALJ cited evidence (including evidence from Dr. Zylanoff herself) that Plaintiff rapidly improved after receiving treatment at the hospital (Tr. 20).

The issue of whether Plaintiff is disabled within the meaning of the Social Security Act is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Gaskin v. Comm'r of Soc. Sec.*, 280 Fed. App'x 472, 474 (6th Cir. 2008). "Generally, the opinions of treating physicians are given substantial, if not controlling deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). However, a treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Cox v. Comm'r of Soc. Sec.*, 295 Fed. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *see also Kidd v. Comm'r of Soc. Sec.*, 283 Fed. App'x 336, 340 (6th Cir. 2008). An opinion that is based on Plaintiff's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876-77 (6th Cir. 2007).

This Magistrate Judge finds the ALJ complied with the procedural aspects of the treating physician rule, and his ultimate decision to give Dr. Zylanoff's opinion little weight was sufficiently explained and within the "zone of choice" accorded an ALJ on substantial evidence review. *See Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.1986).

**III. CONCLUSION**

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED** and that the findings and conclusions of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *See McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See E.D. Mich. LR 5.1*. A copy of any objections is to be served upon this Magistrate Judge but this does not constitute filing. *See E.D. Mich. LR 72.1(d)(2)*. Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. *See E.D. Mich. LR 72.1(d)(3), (4)*.

                                                s/Mark A. Randon
                                                Mark A. Randon
                                                United States Magistrate Judge

Dated: January 16, 2013

*Certificate of Service*

-13-

    *I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, January 16, 2013, by electronic and/or ordinary mail.*

                    *s/Eddrey Butts*
                      *Case Manager*

4:12-cv-10197-MAG-MAR Doc # 15 Filed 01/16/13 Pg 13 of 13 Pg ID 627